Rodríguez de Oronoz, Juez Ponente
*989 TEXTO COMPLETO DE LA SENTENCIA
El certiorari instado en el caso de epígrafe interesa la revocación de una resolución emitida el 11 de octubre de 1995 por el Tribunal de Primera Instancia, Sala Superior de Bayamón (Hon. Kalil Bacó Viera). Mediante ésta el tribunal denegó una moción de desestimación presentada por el aquí peticionario al amparo de la Regla 64(p) de las de Procedimiento Criminal.
Luego del análisis de los escritos y documentos que obran en autos, resolvemos que resulta procedente expedir el auto solicitado para confirmar la resolución recurrida.
Para colocar el recurso que nos ocupa en correcta perpectiva, veamos los hechos e incidentes procesales que resultan pertinentes y materiales para su adjudicación.
El día 29 de abril de 1995 el joven Modesto Merced Irizarry recibió varios impactos de bala en una cancha de baloncesto en Guaynabo los cuales le causaron la muerte. A raíz de estos hechos, el Ministerio Público presentó denuncias por asesinato en primer grado y violación a los Artículos 6 y 32 de la Ley de Armas contra el peticionario Alexis Ortiz Meléndez, joven de 16 años. Hubo renuncia automática de la jurisdicción del Tribunal Tutelar de Menores.
La Vista Preliminar fue señalada para el 30 de junio de 1995 pero suspendida a petición de la defensa y reseñalada para el día 16 de agosto de 1995.
En esa fecha, 16 de agosto, la defensa solicitó nuevamente la suspensión de la vista para aproximadamente un mes o mes y medio después, aduciendo que necesitaba tiempo para establecer con prueba médica la capacidad disminuida o "imputabilidad animadora" de Alexis Ortiz Meléndez, la que impedía el elemento de deliberación en el acto imputado. Se lo freció una evaluación psicológica que el Psicólogo Clínico José J. Bauermeister, Ph. D. realizó a Alexis Ortiz Meléndez en fecha anterior a los hechos imputados y un artículo del Harvard Medical School Health Letter titulado "Learning: Abilities and Disabilities". Adujo la defensa que el Dr. Bauermeister había declinado declarar por ser esposo de la Directora Administrativa de los Tribunales y que se había contratado al Dr. Víctor Liado, pero que éste necesitaba tiempo adicional para rendir su informe. El Ministerio Público se opuso a la suspensión alegando que cualquier defensa relacionada a la capacidad mental de Alexis Ortiz Meléndez estaba tardía por presentarse verbalmente el día de la vista y no haberse anunciado previamente a tenor con las disposiciones de la Regla 74 de las de Procedimiento Criminal. Además, adujo el Ministerio Público, cualquier determinación sobre la capacidad disminuida del imputado le correspondía al juzgador de los hechos, esto es, al juez o jurado que entendiera en el caso.
Ante estos planteamientos la juez que presidía la vista preliminar, Hon. Neysa Valle, optó por celebrar la misma. El Ministerio Público presentó tres testigos y entregó copia de sus declaraciones juradas. Las partes estipularon la identificación del occiso y el informe de patología. La defensa solicitó nuevamente la suspensión de la vista para presentar sus testigos. La continuación fue señalada para el 18 de agosto de 1995, o sea, dos días después. Ese día la defensa presentó dos testigos, a saber, Vanessa Calderon y José Javier Martínez. La Hon. Neysa Valle procedió entonces a determinar causa probable para acusar por los delitos imputados.
El 29 de septiembre de 1995 el acusado presentó Moción de desestimación bajo la Regla 64(p) de Procedimiento Criminal. Planteó que al no posponerse la vista preliminar y, por el contrario, hacerse la determinación de causa, no se le permitió presentar prueba médica para establecer la inexistencia del elemento de deliberación que requiere el asesinato en primer grado.
El Ministerio Público presentó su escrito de oposición. Argumentó que había presentado prueba de cada uno de los elementos esenciales del delito y su conexión con el acusado, por lo que no había la "ausencia total de prueba" necesaria para que prosperara la desestimación de la acusación. Añadió que tampoco procedía la desestimación de la acusación cuando a juicio del magistrado la prueba sometida demostraba, con igual probabilidad, la comisión de un delito distinto al imputado, en este caso el asesinato en segundo grado alegado por el acusado. Por otro lado, el Ministerio Público rebatió el argumento del acusado de que no se le permitió presentar prueba pericial sobre la capacidad disminuida del acusado, señalando que "amén de ser tardía la moción, tampoco a través de testigos *990 legos, como por ejemplo los padres del acusado, presentó prueba testifical que apuntara a dicha defensa, se limitó a argumentar su Moción de Suspensión y le presentó en cámara a la juez un documento de una revista el cual no fue presentado en evidencia por el acusado'". 
El 11 de octubre de 1995 el tribunal denegó la solicitud de desestimación bajo la Regla 64(p). Igualmente, denegó la reconsideración de dicha determinación el 10 de noviembre de 1995.
El 1 de diciembre del 1995 se presentó una petición de certiorari ante este tribunal. Se alega lo siguiente:

"El peticionario Alexis somete que al denegar la Moción de Desestimación, Instancia incidió al resolver que la defensa tuvo tiempo más que suficiente para presentar cualquier defensa y que no se ha violado derecho sustancial alguno del imputado".

Luego de tener el beneficio de la comparecencia del Honorable Procurador General de Puerto Rico procedemos a resolver.
II
Comenzamos señalando que en este caso se entrelazan preceptos de dos órdenes legales: el concepto de jurisdicción en el ordenamiento jurídico de menores y aquel de vista preliminar en el ordenamiento jurídico de adultos.
Concepto de Jurisdicción en la Ley de Menores de Puerto Rico
Una de las disposiciones cruciales de la Ley de Menores de Puerto Rico (Ley Núm. 88 de 9 de julio de 1986, según enmendada, (34 L.P.R.A. sees. 2201 y ss.) es aquella que define la jurisdicción del Tribunal de Menores, esto es, la jurisdicción de la Sala Superior del Tribunal de Primera Instancia que ejerce su autoridad bajo las disposiciones de dicha ley.
La jurisdicción o autoridad del Tribunal de Menores se encuentra definida en el Art. 4 de la Ley de Menores (34 L.P.R.A. see. 2204) y lee como sigue:

"El Tribunal tendrá autoridad para conocer de:

(a)Todo caso en que se impute a un menor conducta que constituya falta, incurrida antes de éste haber cumplido dieciocho (18) años de edad. Dicha autoridad estará sujeta al período prescriptivo dispuesto en las leyes penales para la conducta imputada.

(b)Cualquier asunto relacionado con menores, según dispuesto mediante ley especial, confiriéndole facultad para entender en dicho asunto.

El Tribunal no tendrá autoridad para conocer de:

(a) Todo caso en que se impute a un menor que hubiere cumplido quince (15) años de edad la comisión de hechos constitutivos de asesinado en primer grado mediante deliberación y premeditación.

(b) Todo caso en que se impute a un menor que hubiere cumplido quince (15) años de edad hechos constitutivos de delito que surjan de la misma transacción o evento constitutivo de asesinato en primer grado mediante deliberación y premeditación.

(c) Todo caso en que se impute a un menor que hubiere cumplido quince (15) años de edad hechos constitutivos de delito cuando se le hubiese adjudicado previamente un asesinato como adulto."

En todos los casos contemplados en los incisos anteriores, el menor será procesado como un adulto.

La Sala de lo Criminal del Tribunal General de Justicia conservará jurisdicción sobre el menor 
*991
aun cuando haga alegación de culpabilidad o medie convicción por un delito distinto al asesinato. Igualmente, conservará jurisdicción cuando el Tribunal Superior, Sala de Menores, hubiere renunciado a la jurisdicción del menor y en el procedimiento ordinario como adulto al menor se le archivaran los cargos o se le encontrara no culpable.

Cuando un magistrado determine la existencia de causa probable por un delito distinto al asesinato, éste y cualquier otro delito que surgiere de la misma transacción se trasladará al Tribunal que ejerza su autoridad bajo las disposiciones de esta ley y éste retendrá y conservará jurisdicción, según se dispone en el Artículo 5 de esta ley." (Enfasis nuestro).
A la luz de la anterior disposición, quedan excluidos de la autoridad y jurisdicción del Tribunal de Menores aquellos casos en que se le imputa a un menor que hubiere cumplido quince (15) años de edad el delito de asesinato en primer grado, esto es, el asesinato cometido mediante deliberación y premeditación. En tales casos el menor deberá ser procesado como un adulto. La anterior disposición establece, además, que si el Ministerio Público somete un caso como asesinato en primer grado, pero el magistrado determina existencia de causa probable por un delito distinto al asesinato, como por ejemplo asesinato en segundo grado, este delito (asesinato en segundo grado) y cualquier otro delito que surja de la misma transacción, deberán trasladarse al Tribunal de Menores, el tribunal con jurisdicción y autoridad para conocer de los mismos.
Como es sabido, el delito de asesinato en primer grado, en su modalidad de muerte alevosa, premeditada y deliberada requiere una intención específica de ocasionar la muerte. Esa intención se manifiesta por las circunstancias relacionadas con el delito, la capacidad mental, las manifestaciones y la conducta del acusado. El concepto de malicia premeditada implica la ausencia de justa causa o excusa al ocasionar la muerte y la existencia de la intención de ocasionar la muerte de un semejante. Por otro lado, a los fines del delito de asesinato en primer grado, la deliberación se ha definido como la resolución de matar después de darle alguna consideración y cualquier período de tiempo, por corto que sea, es suficiente para que pueda tener lugar la deliberación.
Así pues, cuando se le imputa a un menor que ha cumplido quince (15) años de edad la comisión del delito de asesinato en primer grado, es necesario que el magistrado que determina causa probable en vista preliminar tenga ante sí prueba suficiente sobre la intención específica de ocasionar la muerte y sobre la resolución de matar a un semejante luego de darle alguna consideración.
En aquellos casos en que se somete a vista preliminar a un adulto al que se le imputa el delito de asesinato en primer grado, el único efecto de una determinación de causa probable por asesinato en primer grado es la de autorizar al Ministerio Público a presentar acusación por dicho delito.
De otro lado, cuando se le imputa a un menor la comisión del delito de asesinato en primer grado y conforme lo que dispone el Art. 4 de la Ley de Menores, se somete éste a una vista preliminar en el sistema de justicia criminal, la determinación de causa probable por asesinato en primer grado tiene la consecuencia o dimensión adicional de negarle al menor un procesamiento bajo la Ley de Menores. Por ello, para los menores imputados del delito de asesinato en primer grado, la prueba que se presente en vista preliminar sobre los elementos de deliberación y premeditación tiene un contorno especial.
Concepto de Vista Preliminar en el Sistema de Justicia Criminal
La Regla 23 de las Reglas de Procedimiento Criminal de Puerto Rico (34 L.P.R.A. Ap. II, R. 23) reglamenta todo lo relacionado a la vista preliminar y, entre otros extremos, dispone que se celebrará una vista preliminar en todo caso en que se le impute a una persona un delito grave y concede a dicho imputado el derecho a contrainterrogar a los testigos en su contra y ofrecer prueba a su favor. Así pues, en lo pertinente dicha regla dispone:
"Si la persona compareciere a la vista preliminar y no renunciare a ella, el magistrado deberá oír la prueba. La vista será privada a menos que al comenzar la misma la persona solicitare que fuere pública. La persona podrá contrainterrogar a los testigos en su contra y ofrecer prueba en su favor. El fiscal podrá estar presente en la vista y podrá también interrogar y contrainterrogar a todos los *992 testigos y ofrecer otra prueba. Al ser requerido para ello el fiscal pondrá a disposición de la persona las declaraciones juradas que tuviere en su poder de los testigos que haya puesto a declarar en la vista. Si a juicio del magistrado la prueba demostrare que existe causa probable para creer que se ha cometido un delito y que la persona lo cometió, el magistrado detendrá inmediatamente a la persona para que responda por la comisión de un delito ante la sección y sala correspondiente del Tribunal de Primera Instancia; de lo contrario exonerará a la persona y ordenará que sea puesta en libertad.... (Enfasis nuestro).
Aunque la Regla 23 le reconoce al acusado el derecho a presentar prueba a su favor, la vista preliminar no debe entenderse como un minijuicio ni como un mecanismo de descubrimiento de prueba. La presentación de prueba de defensa es un derecho que opera en función del quántum de prueba requerido en esta etapa procesal. Pueblo v. Rodríguez Aponte, 116 D.P.R. 653 (1985); Olga E. Resumil, Derecho Procesal Penal, vol. I, sec. 15.7, pág. 380 (1990). Es decir que, por la naturaleza de la vista preliminar, su desarrollo está limitado a su función básica: la determinación de causa probable para creer que se ha cometido un delito y que el mismo ha sido cometido por el acusado. Pueblo v. Rivera Rodríguez, _ D.P.R _ (1995), 95 J.T.S. 36; Del Toro Lugo v. Estado Libre Asociado de P.R., _ D.P.R. _ (1994), 94 J.T.S. 119; Pueblo v. Rivera Alicea, 125 D.P.R. 37 (1989); Resumil, supra, sec. 15.6, pág. 380.
La carga de prueba que se le requiere presentar al Ministerio Público es modesta. Se trata de aquella prueba que justifique someter al imputado a un juicio por cuenta de que el Ministerio Público posee la evidencia suficiente para establecer los elementos del delito y la conexión del imputado con el mismo. Ernesto L. Chiesa, Derecho Procesal Penal de Puerto Rico y Estados Unidos, Vol. Ill, see 22.6, págs. 89-90 (1993).
En cuanto a determinación de causa probable para acusar, el Tribunal Supremo ha resuelto que:

"[l]a vista preliminar, en términos del quántum de la prueba lo que requiere es una mera 'scintilla' o un mínimo de evidencia para apoyar la determinación prima facie de que se cometió un delito y de que con toda probabilidad fue el imputado quien lo cometió." 

El efecto de la determinación de causa probable para acusar es autorizar al fiscal a presentar acusación por el delito por el cual se determinó causa. Chiesa, supra, sec. 22.7, pág. 93. Dicha determinación goza de una presunción legal de corrección. Pueblo v. Ocasio Hernández, _ D.P.R. _ (1995), 95 J.T.S. 122; El Vocero de P.R. v. Estado Libre Asociado de Puerto Rico, _ D.P.R. _ (1992), 92 J.T.S. 108; Pueblo v. Rivera Alicea, supra; Pueblo v. González Pagán, 120 D.P.R. 684 (1988); Pueblo v. Rodríguez Aponte, supra; Rabell Martínez v. Tribunal Superior, 101 D.P.R. 796 (1973). Por tanto, en su revisión, el acusado corre con el peso de la prueba.
El mecanismo procesal que un acusado tiene disponible para revisar la determinación de causa probable para acusar es la moción de desestimación de la acusación bajo la Regla 64(p) de Procedimiento Criminal. Pueblo v. Ocasio Hernández, supra. La misma dispone como fundamento de desestimación el siguiente:

"Que se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho." 

La carga probatoria que supone el uso exitoso de esta moción es considerable. El Tribunal Supremo ha dicho reiteradamente que el criterio rector que presupone su acogida es la "ausencia total de prueba" en cuanto a la probabilidad de que se haya cometido el delito imputado -que no hay prueba sobre uno o. todos los elementos del delito- o sobre la conexión del acusado con el delito imputado. Pueblo v. Ocasio Hernández, supra; Pueblo v. Rodríguez Ríos, _ D.P.R. _ (1994), 94 J.T.S. 106; Pueblo v. Rivera Alicea, supra; Pueblo v. González Pagán, supra; Pueblo v. Tribunal Superior, 104 D.P.R. 454 (1975). Dicho criterio caracteriza la carga probatoria del acusado que solicita la desestimación de la acusación a base de que en la vista preliminar no se determinó causa probable con arreglo a la ley y a derecho. Chiesa, supra, sec 22.7, pág. 96.
*993 in
A la luz de los preceptos o conceptos legales expuestos, uno del sistema de justicia juvenil y otro del sistema de justicia criminal, podemos delimitar las controversias que se suscitan en el presente caso: primero, si en la vista preliminar hubo ausencia total de pmeba para establecer los elementos del delito de asesinato en primer grado y la conexión del imputado con el mismo y segundo, si al menor imputado se le violó algún dérecho fundamental en la vista preliminar.
De entrada, debemos consignar algunos principios. La función del juez de instancia ante una moción bajo la Regla 64(p) de Procedimiento Criminal es determinar si la prueba ante sí establece la probabilidad de que estén presentes todos los elementos del delito imputado (probabilidad de que se haya cometido el delito imputado); concomitantemente a dicho examen el juez de instancia debe determinar si hay prueba que probablemente conecte al imputado con el delito probablemente cometido. Pueblo v. Rivera Alicea, supra.
En cuanto a la función del foro apelativo, el análisis adecuado para resolver si un juez de instancia actuó correctamente ante una moción de desestimación bajo la Regla 64(p) de Procedimiento Criminal requiere examinar la prueba que tuvo ante sí dicho juez en la etapa de los procedimientos a la que se contrae una moción de esta índole. Mediante dicho examen el foro apelativo podrá determinar si la prueba que tuvo ante sí el juez de instancia fue suficiente para establecer la probabilidad de que estuvieran presentes todos los elementos del delito imputado y su probable conexión con el imputado.
Veamos la prueba que tuvo en este caso el juez de instancia al dilucidar la moción de desestimación. No se celebró vista evidenciaría. Por ello sólo tenemos que examinar el resumen que de la prueba desfilada en vista preliminar consta en los escritos sometidos al foro recurrido.
En su moción de desestimación el acusado no ofreció exposición o resumen alguno de la prueba presentada en la vista preliminar. La defensa sólo hizo hincapié en que ofreció al juez de vista preliminar el informe del Dr. Bauermeister que establecía que Alexis Ortiz Meléndez tenía un nivel alto de actividad, impulsividad y era hiperactivo y un artículo de The Harvard Medical School Health Letter, que señalaba que los jóvenes hiperactivos eran impulsivos y no pensaban los riesgos y las consecuencias de sus actos. Para sustentar que la determinación de causa probable por asesinato en primer grado fue hecha sin arreglo a la ley y a derecho el acusado argumentó que pidió y se le negó "tiempo para traer prueba médica demostrativa de la doctrina de imputabilidad animadora que limita el discernimiento y nubla la conciencia del acto". En la moción de desestimación se adujo, además, que una suspensión de un mes para que el psiquiatra declarara no era una petición injustificada.
Por su parte, el Ministerio Público ofreció el siguiente resumen de la prueba presentada en la vista preliminar:

"De la prueba presentada se desprende que el acusado obtuvo un arma de fuego deforma ilegal ya que él es un menor (16 años) y no tiene ni puede tener autorización para tener y poseer un arma de fuego; acudió al lugar donde encontraría al occiso; no fue un encuentro casual; se dirigió específicamente a donde él le disparó por la espalda; el occiso trató de huir, lo acecho [sic] y estando en el piso inequívocamente le disparó en la cabeza en tres ocasiones causándole la muerte a Modesto Merced Irizarry. Que él rogó por su vida y aún así continuó disparando. El tiempo entre la alegada discusión y los tiros es de aproximadamente una hora que permite un tiempo de reflexión ('cooling period'), de deliberar como [sic] matar al occiso, ya que tiene que obtener un arma, planificar como va a llegar al lugar y como [sic] va a escapar, conseguir dos complices [sic] para que lo llevaran y trajeran. Ciertamente están [sic] todos los elementos del delito de asesinato en primer grado y de la ley de armas". 

El Ministerio Público ofreció, además, el siguiente resumen de los testimonios de los testigos de defensa Vanessa Caldero y José Javier Martínez en la vista preliminar.
"La primera testificó, en esencia, que tiene 19 años; que conoce a Alexis hace años, que es vecina de al lado de él; que el 29 de abril de 1995 a las 4:00 p.m. oyó un ruido, voces altas y se asomó por la ventana y vio a cuatro jóvenes y al Indú (apodo del occiso); que Indú estaba discutiendo con Alexis y estaban mencionando a Axel; el Indú estaba en actitud agresiva y le tocaba los hombros a Alexis *994 cuando le hablaba. El incidente dura de 15 a 20 minutos. Alexis estaba a la defensiva y molesto y dice que Indú le dijo a Alexis que se tenía que matar. Luego el Indú se va y que oyó posteriormente unos tiros. Cuando oye los tiros a [sic] pasado alrededor de una hora entre la discusión y los tiros. Que desde su casa a la cancha se echaría caminando de 3 a 4 minutos.

El segundo testigo dijo tener 17 años; conoce a Alexis y al Indú lo conoce de la cancha. El día de los hechos, casi a las 5:00 p.m. estaba tirando bolas al canasto cuando llegó el Indú y le dijo que había ido a casa de Alexis, le había dado un par de empujones por un problema con Axel y estaba 'enfogonao' con Alexis. Le pidió a él que lo llevara a la Cancha de "terraza" que iba a resolver el problema. Empezaron a jugar baloncesto, ve a Alexis venir de su casa para la cancha; lo ve 'enfogonao' caminando serio; se paró al lado derecho de la cancha y llamó al Indú, le apuntó y disparó; estando en el piso éste le suplicaba a Alexis por su vida; aún así le siguió disparando varios disparos corridos; luego Alexis se fue en dirección de Calle arriba y se montó en un carro oscuro." 

La defensa nunca controvirtió la exposición o relación de prueba en vista preliminar que el Ministerio Público presentó al juez recurrido y nunca alegó ausencia total de prueba de alguno o todos los elementos del delito o de su conexión con el acusado.
De nuestro examen de la pmeba que tuvo ante sí el juez recurrido nos convencemos de que ante él quedó establecida la probabilidad de que en el caso están presentes todos los elementos del delito imputado y la probable conexión del imputado con el delito probablemente cometido. Nuestra conclusión es que el juez de instancia no tuvo ante sí la ausencia total de prueba sobre los elementos del delito de asesinato en primer grado y su conexión con el acusado que le hubieren permitido desestimar la acusación.
Queda por examinar la alegación sobre violación a derechos fundamentales. Aduce el peticionario que negarle el derecho a traer prueba a su favor —prueba sobre la defensa afirmativa de imputabilidad animadora— constituye una violación al debido proceso de ley y una privación del derecho a obtener la comparecencia compulsoria de testigos. Bajo el palio del concepto de jurisdicción de la Ley de Menores el peticionario nos señala que:

"La acción de no permitir la defensa afirmativa del imputado es una violación al debido proceso de ley y las consecuencias son enormes. Veamos.

Si la determinación de causa probable en la vista preliminar fuera de Asesinato en Segundo Grado, como entendemos que sería, luego de oir la prueba de la defensa sobre imputabilidad animadora el Hon. Tribunal tendría que enviar el expediente al Tribunal Superior, Sala de Menores...". 

Concluimos que tales violaciones no fueron cometidas. La juez que presidió sobre la vista preliminar en este caso nunca resolvió que la defensa afirmativa de capacidad disminuida o imputabilidad animadora no procedía a nivel de vista preliminar. Tampoco rechazó prueba sobre estas defensas durante la vista preliminar. No impidió la presentación de testimonio pericial ni se negó testigo alguno. No obstante, de haber habido cualquier resolución judicial a estos efectos, la forma de revisar tal dictamen hubiese sido mediante el auto de certiorari instado en aquel momento.
Al analizar la vista preliminar celebrada en el caso que nos ocupa tenemos que concluir que el peticionario tuvo oportunidad de contrainterrogar a los testigos de cargo y de presentar prueba a su favor. Lo que no tuvo el peticionario fue el beneficio de la suspensión de la vista preliminar por una segunda ocasión. La defensa imputa a tal determinación la negación a su derecho a presentar prueba a su favor y la interpreta como una negativa a la admisión de tal testimonio. Se equivoca en su interpretación. El juez de la vista preliminar no impidió la presentación de testimonio pericial ni rechazó prueba de defensa sobre la ausencia de los elementos de deliberación y premeditación. Lo que ocurrió fue que la parte proponente no tuvo disponible dicha prueba en las tres oportunidades que tuvo para ello: el 30 de junio de 1995, el 16 de agosto de 1995 y el 18 de agosto de 1995. Ello a pesar de que la defensa obtuvo una posposición de más de un mes y medio entre la vista original del 30 de junio y la del 16 de agosto; y que desde el momento de los hechos el 29 de abril de 1995 hasta el *995 momento en que en efecto se presentaron los testigos de defensa, el 18 de agosto, transcurrieron casi cuatro meses.
Coincidimos con el Tribunal de Primera Instancia en su determinación de que el imputado tuvo suficiente tiempo para presentar el testimonio pericial. La determinación del juez de vista preliminar en cuanto a otorgar o no una segunda suspensión de la vista era de carácter discrecional. Reglas de Administración, 4 L.P.R.A. Ap. II-A, R.10; Sucn. Pagán Lozada v. Berríos Berdecía, 84 D.P.R. 624 (1962). El Tribunal no abusó de tal discreción.
La defensa acepta que al momento de celebrarse la vista preliminar el Dr. Liado no había rendido su informe sobre la condición mental del imputado. Era especulativo predecir el contenido de dicho informe. Se hace evidente que la defensa pretendía aplazar la vista preliminar sin tener nada concreto sobre la prueba pericial que presentaría.
De todos modos, la defensa tuvo la oportunidad de presentar prueba sobre la capacidad mental disminuida del imputado. La juez que presidió la vista preliminar examinó el informe confidencial que preparó el Psicólogo Clínico Dr. Bauermeister luego de que éste evaluara al imputado Alexis Ortiz Meléndez en tres ocasiones. La juez examinó, además, la literatura médica que alegadamente establece que los jóvenes hiperactivos e impulsivos tienen un impedimento mental para deliberar sobre sus actos. Tenemos que concluir que la juez no encontró elemento alguno que motivara su discreción a suspender la vista preliminar para oír testimonio adicional sobre dichos extremos.
Más aún, la defensa tuvo a su alcance presentar prueba sobre la alegada capacidad mental disminuida del imputado a través de otros testigos que no fuera el Dr. Liado. Sabido es que: "Para ayudar al juzgador a determinar la condición mental del acusado, tanto el Ministerio Público como la defensa pueden hacer uso de testigos legos. El testimonio de éstos puede ser descriptivo sobre los hechos percibidos o 'en forma de opiniones o inferencias' siempre que 'estén racionalmente basadas en la percepción ~del-testigo y que sean de ayuda para el mejor entendimiento de su declaración o para la determinación de un hecho en controversia'." 
En conclusión, lo que realmente impugna la defensa es la determinación de la juez de no suspender o aplazar la vista preliminar. La moción de desestimación bajo la Regla 64(p) no es el mecanismo procesal adecuado para tales fines. El imputado no alegó, mucho menos demostró, que la vista preliminar se celebró sin arreglo a ley y a derecho, criterio sine qua non para desestimar la acusación bajo la regla 64(p).
No obstante, aun si la negativa del juez a extender la vista preliminar hubiese significado una restricción del derecho de presentar prueba, tal restricción resulta permisible por la naturaleza de la vista preliminar.
El rechazo de la concepción de la vista preliminar como un minijuicio implica, entre otras cosas, que el derecho del imputado a presentar prueba a su favor no es irrestricto. Pueblo v. Rodríguez Aponte, supra. Luego de que el juez de la vista preliminar se "ha convencido de la existencia de causa probable puede, dentro de su facultad para reglamentar la presentación de prueba de la defensa, decidir no seguir escuchando prueba, o sea, no escuchar la prueba de la defensa". El Vocero v. E.L.A., supra.
De este modo, la juez que entendió en la vista preliminar de este caso no venía obligada a oír toda la prueba disponible. Convencida de la existencia de causa probable a base de la prueba presentada por el Ministerio Público y la defensa, la juez podía decidir no escuchar prueba adicional de la defensa. Al así decidir, actuó dentro del marco que delimita los contornos de la vista preliminar en nuestro ordenamiento.
Concluimos, pues, que no hubo violación de derecho fundamental alguno en la vista preliminar celebrada a Alexis Ortiz Meléndez.
IV
Por los fundamentos expuestos se expide el auto y se confirma la resolución recurrida.
*996 Así lo acordó y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97 DTA 43
1. Véase la "Moción en oposición a otra sobre desestimación" del Ministerio Público, Apéndice del Recurso de Certiorari, pág. 10.
2. Del Toro Lugo v. Estado Libre Asociado, supra.
3. 34 L.P.R.A. Ap.n, R. 64(p).
4. Véase la "Moción en oposición a otra sobre desestimación" del Ministerio Público, Apéndice del recurso de certiorari, pág. 10.
5. Ibid, págs. 8-9.
6. Petición de Certiorari, pág. 6.
7. Regla 51, Reglas de Evidencia; Pueblo v. Marcano Pérez, 116 D.P.R. 917 (1986).