# 2004 DTA 90

**TRIBUNAL DE CIRCUITO DE APELACIONES**
**REGION JUDICIAL DE PONCE**

EL PUEBLO DE PUERTO RICO
Peticionario

v.

RAFAEL CORTES QUIÑONES, JOSE LUIS BORRERO ARROYO,
CHRISTOPHER COLON QUIÑONES
Recurridos

Núm. KLCE-04-00164

San Juan, Puerto Rico, a 13 de abril de 2004

Panel integrado por su Presidente, el Juez Brau Ramírez,
la Juez Hernández Torres y el Juez Martínez Torres

Brau Ramírez, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

Contra los recurridos de epígrafe, Rafael Cortés Quiñones, José Borrero Arroyo y Christopher Colón Quiñones, se presentaron denuncias ante el Tribunal de Primera Instancia, Sala de Ponce, por asesinato en primer grado, 33 L.P.R.A. secs. 4001 y 4002, y por violación a los arts. 5.04 y 5.07 de la Ley de Armas, 25 L.P.R.A. secs. 458c y 458f, por portación ilegal de armas y posesión de armas largas. Los cargos estaban relacionados a hechos ocurridos en Ponce el 21 de agosto de 2002.

A los recurridos se les imputó que, actuando en concierto y común acuerdo, asesinaron a Angel Martínez Ortiz, conocido como "*Papote*", utilizando un rifle negro y una pistola.

La prueba introducida por el Ministerio Público para sostener dichos cargos consistió en la declaración de la Sra. Ivonne Quiñones Alvarado, la viuda del occiso.

Según la versión de dicha testigo, el día de los hechos, su esposo iba cruzando en bicicleta por un pasto que existía en el lugar de los hechos, cuando fue llamado por tres individuos que estaban en un carro Honda color verde. Entre los individuos del carro se encontraban los recurridos José Borrero Arroyo y Christopher Colón Quiñones.

Su esposo se acercó al vehículo y conversó con los recurridos. Cuando les dio la espalda para irse en la bicicleta, la testigo vio que Christopher Colón sacó un rifle negro de la parte del frente del lado del pasajero y le hizo varios disparos a su esposo. Los disparos fueron hechos como a una distancia de 5 pies. Fueron 18 a 20 disparos. Su esposo cayó al suelo y allí le siguieron disparando.

Entonces, Rafael Cortés Quiñones llegó corriendo hasta su esposo de otro lugar y lo remató en el cuello con una pistola aniquelada.

El occiso fue sometido a una autopsia. El 22 de agosto de 2002, se preparó el correspondiente informe. El informe refleja que el occiso falleció como consecuencia de numerosas heridas de bala (nueve). Durante el examen patológico, se recuperaron varios de los proyectiles. También se ocuparon piezas de bala en la escena del crimen.

Las piezas recuperadas fueron sometidas a un examen de balística por parte del Instituto de Ciencias Forenses. El 28 de agosto de 2002, se preparó el informe correspondiente.

El informe de balística refleja que los objetos recuperados eran los siguientes: (a) cuatro proyectiles de bala (uno de estos de plomo), dos blindajes de proyectil de bala y dos fragmentos de plomo (Exhibit 1, marcados del E-1 al E-9); (b) un casquillo de bala disparado calibre 9mm Luger (Exhibit 2, marcado E-1); y (c) dos proyectiles de bala (uno de estos de plomo), un blindaje de proyectil de bala y cuatro fragmentos de plomo (Exhibit 3, marcados E-10 al E-16).

El informe de balística reflejó los siguientes hallazgos:

"*1. El casquillo de bala marcado E-1 (uno) descrito en el exhibit #2 es calibre 9mm y fue disparado por un arma de fuego del mismo calibre (Total 1 pcs).*

*2. El proyectil de bala marcado E-1 (uno) descrito en el exhibit #1 es calibre 9mm y fue disparado por un arma con estriación hacia la derecha (R-6) del mismo calibre total 1 pcs.*

*3. Los proyectiles de bala marcados E-2, E-3 (dos), los blindajes de proyectil de bala marcados E-5, E-6 (dos), descritos en el exhibit #1 al igual el blindaje de proyectil de bala marcado E-12 (uno) descrito en el exhibit #3 (P02-350) son calibre 9mm y fue[r]on disparados por una misma arma de fuego con estriación hacia la derecha (R-5) del mismo calibre (Total 5 piezas).*

*4. El proyectil de bala marcado E-10 (uno) descrito en el exhibit #3 (P02-350) es calibre 9mm y fue disparado por un arma con estriación hacia la derecha del mismo calibre (Total 1 pcs).*

*5. El proyectil de bala marcado E-4 (uno) descrito en el exhibit #3 (P-02-350) sin calibre 38/357 (del tipo*

*Lead Wadcutter), los mismos fueron disparados por un arma con estriación hacia la derecha (R?) por su alto grado de mutilación, los mismo[s] no tienen suficientes características microscópicas propias de comparación para llegar a una conclusión final entre sí (Total 2 pcs).*

*6. El fragmento de blindaje de proyectil de bala marcado E-7 (uno) descrito en el exhibit #1 no tiene suficientes características microscópicas propias de comparación par[a] concluir con respecto a los demás (Total 1 pcs).*

*7. El proyectil de bala marcado E-8 (uno) descrito en el exhibit #1 es la parte interna (Lead Bullet Core) de un proyectil de bala con blindaje; el mismo no tiene características propias de comparación (Total 1 pcs).*

*8. El fragmento de plomo marcado E-9 (uno) descrito en el exhibit #1, al igual los fragmentos de plomo marcados E-13, E-14, E-15 (tres) descritos en el exhibit #3 (P02-350), no tienen características microscópicas propias de comparación (Total 4 pcs)."*

A base de la prueba presentada por el Ministerio Público, el Tribunal de Primera Instancia ordenó el arresto de los recurridos.

La vista preliminar fue celebrada el 10 de septiembre de 2003. El Ministerio Público presentó el testimonio de la Sra. Quiñones, quien ofreció la versión descrita anteriormente. También se presentó el informe de autopsia, copia del cual fue entregado a los recurridos.

El Ministerio Público no entregó a los recurridos, en esta etapa, el informe de balística, el que no fue presentado durante la vista.

A la conclusión de la vista preliminar, la parte recurrida solicitó al Ministerio Público que revelara los hallazgos que reflejaba el informe de balística alegando que dichos hallazgos resultaban incompatibles con el uso de un rifle. La defensa alegó que el informe de balística constituía prueba exculpatoria, ya que el mismo reflejaba que no se había utilizado un rifle y sí armas cortas, contrario a lo declarado por la Sra. Quiñones

El Ministerio Público replicó que el informe de balística no reflejaba la clase de armas utilizadas en el crimen, ni si se trataba de armas largas o armas cortas. Indicó que no sometería dicho informe en esa etapa.

A base de la prueba presentada, el Tribunal de Primera Instancia determinó la existencia de causa probable para acusar a los recurridos por los delitos mencionados.

El Ministerio Público procedió a presentar las debidas acusaciones.

Oportunamente, los recurridos presentaron una moción de desestimación, al amparo de la Regla 64, inciso (p) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64(p).

En su moción, los recurridos alegaron que la determinación de causa para acusar había sido contraria a derecho, porque el Ministerio Público no había presentado el informe de balística ni lo había hecho accesible a la defensa, a pesar de que se trataba de evidencia exculpatoria.

En su moción de desestimación, los recurridos alegaron:

*"Como vemos, al leer el referido Informe de Balística resulta forzoso concluir que la información incluida en éste era una que ayudaba al establecimiento de la teoría de la defensa de que la testigo no presenció los hechos de este caso por hacer referencia a hechos y armas, los cuales la evidencia científica practicada refleja*

*que no existían. El Informe de Balística refleja el uso de tres (3) armas, es decir, de dos pistolas y de un revólver. Por otro lado, dicho Informe no refleja balística recuperada alguna compatible con un rifle, aspecto que se corrobora en la descripción de los orificios de entradas en el occiso que no demuestran la violencia y el daño que produce un impacto de bala de un rifle a cinco (5) pies; La prueba que arroja el Informe de Balística fue retenida por el representante del Ministerio Público en la Vista Preliminar, al negarse a presentar en evidencia o entregar el referido Informe de Balística a los acusados, así como su contenido cuya prueba era favorable a los acusados y la cual era esencial en su defensa para demostrar que el testimonio de la testigo de cargo no es susceptible de ser creído."*

El Ministerio Público se opuso a la moción de los recurridos.

El 7 de enero de 2004, mediante resolución anunciada en corte abierta, el Tribunal de Primera Instancia declaró con lugar la moción de los recurridos y ordenó la desestimación de las acusaciones. El Tribunal entendió que la actuación del Ministerio Público había violado la garantía de los acusados al debido proceso de ley.

El Tribunal emitió su decisión sin haber celebrado vista evidenciaria alguna en torno a la solicitud de los recurridos.

Insatisfecho, el Procurador General acudió ante este Tribunal.

Mediante resolución emitida el 5 de marzo de 2004, concedimos término a los recurridos para que comparecieran a mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la resolución recurrida.

Los recurridos han comparecido por escrito.

Procedemos según lo intimado.

## II

En su recurso, el Procurador General plantea que el Tribunal de Primera Instancia erró al declarar con lugar la moción de los recurridos sin la celebración de una vista evidenciaria y al concluir que se había violado la garantía al debido proceso de ley.

Según se conoce, la función de la vista preliminar es determinar si existe causa probable para procesar a un imputado por delito. Regla 23(c) de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 23(c)(Supl. 2003); *El Pueblo v. García Saldaña*, 151 D.P.R. ___ (2000), **2000 J.T.S. 121**, a la pág. 1,519; *Pueblo v. Rivera y Rodríguez*, 122 D.P.R. 862, 873-874 (1988).

Se pretende evitar que se someta a un ciudadano al rigor de un proceso criminal de forma injustificada o irrazonable. *Pueblo v. García Saldaña*, **2000 J.T.S. 121**, a la pág. 1,519; *Pueblo v. Ortiz, Rodríguez*, 149 D.P.R. 363, 374 (1999); *Pueblo en Interés del Menor G.R.S.*, 149 D.P.R. 1, 19 (1999).

Para que pueda presentarse una acusación contra una persona, el Ministerio Público viene obligado a establecer que existe causa probable para creer que se ha cometido un delito y que la persona imputada fue quien lo cometió. El Estado viene obligado a presentar evidencia sobre todos los elementos del delito imputado y de que existe la probabilidad de que el imputado sea el responsable de la comisión de dicho delito. *Pueblo v. García Saldaña*, **2000 J.T.S. 121**, a la pág. 1,519; *Pueblo v. Ortiz, Rodríguez*, 149 D.P.R. a la pág. 375; *Pueblo en Interés del Menor G.R.S.*, 149 D.P.R. a la pág. 19.

La prueba no tiene que demostrar la culpabilidad del imputado más allá de toda duda razonable, sino que sólo hay que establecer un caso *"prima facie"* en su contra. *Pueblo v. Ortiz, Rodríguez,* 149 D.P.R. a la pág. 375; *Pueblo en Interés del Menor G.R.S.,* 149 D.P.R. a la pág. 19; *Del Toro Lugo v. E.L.A.,* 136 D.P.R. 973, 991 (1994); Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Volumen III, Colombia, forum, 1993, a las págs. 89-91. El grado de prueba necesario es aquélla que convenza al magistrado de la razonabilidad de exponer a una persona a los rigores de un juicio criminal. *Hernández Ortega v. Tribunal,* 102 D.P.R. 765, 769 (1974)

No se trata de un mini-juicio, ni viene el fiscal obligado a presentar toda la prueba de la que dispone. *Pueblo en Interés del Menor G.R.S.,* 149 D.P.R. a la pág. 21; *Pueblo v. Rodríguez Aponte,* 116 D.P.R. 653, 663-664 (1985).

Dado el carácter limitado de la vista preliminar, en esta etapa generalmente no se autoriza a la defensa realizar descubrimiento de prueba, el que queda apropiadamente asignado a la etapa posterior a la presentación de la acusación, según gobernado por la Regla 95 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 95. *Pueblo v. Rodríguez López,* 155 D.P.R. ___ (2002), **2002 J.T.S. 3**, a las págs. 571-572; *Pueblo v. Ortiz, Rodríguez,* 149 D.P.R. a las págs. 379-380; *Pueblo v. Rivera Rivera,* 145 D.P.R. 366, 375-376 (1998); *Pueblo v. Rivera Rodríguez,* 138 D.P.R. 138, 144 (1995); cf. *Pueblo v. Irizarry Quiñones,* ___ D.P.R. ___ (2003), **2003 J.T.S. 169**, a la pág. 391.

Ahora bien, en *Pueblo v. Ortiz, Rodríguez,* el Tribunal Supremo de Puerto Rico resolvió que como en la vista preliminar el imputado tiene derecho a demostrar que el testimonio en su contra no es susceptible de ser creído, ello implica que el Ministerio Público viene obligado a hacerle entrega, en esta etapa, de aquella evidencia exculpatoria que establezca lo anterior. 149 D.P.R. a la pág. 379.

El Tribunal Supremo advirtió, sin embargo, que:

*"[N]o se trata de un derecho irrestricto de descubrimiento de prueba. No estamos reconociendo un derecho a una "expedición de pesca" en los archivos de fiscalía. En esta temprana etapa del proceso criminal, el imputado sólo tiene derecho a demostrar que es improbable que se haya cometido el delito imputado o que él sea el autor de éste. Por ende, además de las declaraciones juradas de los testigos usados por Fiscalía, sólo puede tener acceso a aquella otra prueba en manos del Ministerio Público que, razonablemente, tienda a demostrar que el testimonio en contra del imputado "no es confiable o no goza de una razonable garantía de veracidad" ... No se trata, por ejemplo, de prueba que tenga Fiscalía sobre simples contradicciones de los testigos de cargo, sino de aquella prueba de calidad suficiente como para derrotar la estimación de causa probable para acusar."*

149 D.P.R. a las págs. 379-380.

La determinación de causa probable, como todo dictamen judicial, goza de una presunción de corrección. *Pueblo v. Rodríguez Aponte,* 116 D.P.R. a la pág. 664; *Rabell Martínez v. Tribunal,* 101 D.P.R. 796, 799 (1973).

Cuando se plantea que la determinación de causa probable para arrestar fue irregular o que no estuvo basada en prueba suficiente, el mecanismo procesal apropiado para revisar la misma es a través de una moción de desestimación basada en el inciso (p) de la Regla 64 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 64. *Pueblo v. Rivera Rodríguez,* 150 D.P.R. 428, 435-436 (2000); *Pueblo v. Jiménez Cruz,* 145 D.P.R. 803, 814 (1998); véase, además, *Pueblo v. Kevin Branch,* 154 D.P.R. ___ (2001), **2001 J.T.S. 108**, a la pág. 1,539.

Dicho precepto autoriza a toda persona a solicitar la desestimación de una acusación en su contra por el

fundamento de que no se determinó causa probable para responder por el delito *"con arreglo a la ley y a derecho"*.

Para prevalecer en cuanto a dicha moción, el acusado viene obligado a demostrar que medió una ausencia total de evidencia legalmente admisible en cuanto a alguno de los elementos del delito o en cuanto a la conexión del acusado con el delito imputado. *Pueblo v. Andaluz Méndez*, 143 D.P.R. 656, 662 (1997); *Pueblo v. Rodríguez Ríos*, 136 D.P.R. 685, 690-691 (1994); *Pueblo v. Tribunal Superior*, 104 D.P.R. 454, 459 (1975); *Vázquez Rosado v. Tribunal Superior*, 100 D.P.R. 592, 594 (1972); Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos*, Volumen III, a las págs. 256-257.

Presentada la moción al amparo de la Regla 64(p), el tribunal de instancia puede, en el ejercicio de su discreción, celebrar una vista para entender y recibir prueba, o puede rechazarla de plano si de su faz y de las constancias en el expediente del caso, no resulta meritoria. *Pueblo v. Rodríguez Ríos,* 136 D.P.R. a la pág. 691; *El Vocero de P.R. v. E.L.A.,* 131 D.P.R. 356, 411 (1992); *Pueblo v. Tribunal Superior,* 104 D.P.R. a las págs. 459-460.

En el caso de autos, según hemos visto, el Tribunal acogió la moción de desestimación de los recurridos, sin haber celebrado una vista evidenciaria. Es evidente, a la luz de la evidencia desfilada, que no podría concluirse que exista ausencia total de prueba para acusar a los recurridos por los delitos imputados. *Pueblo v. Andaluz Méndez,* 143 D.P.R. a la pág. 662; *Pueblo v. Rodríguez Ríos,* 136 D.P.R. a la págs. 690-691; *Vázquez Rosado v. Tribunal Superior,* 100 D.P.R. a la pag. 594.

El Tribunal entendió, sin embargo, que debía desestimarse la acusación, debido a la omisión del Ministerio Público de presentar y hacer disponible a la defensa el Informe Balístico preparado en el caso. El Tribunal concluyó que lo anterior constituia una violación al debido proceso de ley.

El Ministerio Público, sin embargo, no venía obligado a presentar toda la evidencia con la que contaba en la etapa de vista preliminar. *Pueblo en Interés del Menor G.R.S.,* 149 D.P.R. a la pág. 21; *Pueblo v. Rodríguez Aponte,* 116 D.P.R. a las págs. 663-664 (1985).

Tampoco está claro que el Informe de Balística en cuestión constituyera, como tal, evidencia exculpatoria, cuya revelación por el Ministerio Público fuese constitucionalmente requerida, como cuestión de debido proceso de ley. *Pueblo v. Echevarría Rodríguez I,* 128 D.P.R. 299, 333 (1991); *Pueblo v. Romero Rodríguez,* 112 D.P.R. 437, 440 (1982); *Pueblo v. Rodríguez Sánchez,* 109 D.P.R. 243, 246 (1979); *Pueblo v. Hernández García,* 102 D.P.R. 506, 508-509 (1974); *Brady v. Maryland,* 373 U.S. 83, 87 (1963); véase, además, Ernesto L. Chiesa Aponte, *Derecho Procesal Penal de Puerto Rico y Estados Unidos,* Vol II, Colombia, Forum, 1992, págs. 28 y ss.

Los recurridos alegan que el informe demuestra que el testimonio de la Sra. Quiñones es perjuro, por cuanto ésta declaró que el recurrido Christopher Colón había utilizado un rifle para dar muerte a su marido y el informe resulta incompatible con dicha declaración.

Lo cierto es que los hallazgos del informe en cuestión, los que hemos reproducido anteriormente, no expresan opinión específica alguna sobre el tipo de arma utilizada en el crimen. Lo único que se indica es el calibre de las armas (9mm y 38/357).

La posición de los recurridos, de este modo, está basada en la inferencia de que los proyectiles calibre 9mm ocupados corresponden a una pistola. Pero esto constituye en esta etapa una mera cuestión de interpretación, que requiere ser sustentada mediante el testimonio pericial pertinente.

Contrario a lo que plantean los recurridos, el Informe de Balística no es, de su faz, incompatible con el testimonio de la Sra. Quiñones, por lo que el Ministerio Público no venía obligado a entregar el mismo en la etapa de vista preliminar. *Pueblo v. Ortiz, Rodríguez*, 149 D.P.R. a las págs. 379-380; véanse, además, *Pueblo v. Rodríguez López*, **2002 J.T.S. 3**, a las págs. 571-572; *Pueblo v. Rivera Rivera*, 145 D.P.R. a las págs. 375-376; *Pueblo v. Rivera Rodríguez,* 138 D.P.R. a la pág. 144.

Aun si la parte de la declaración de la Sra. Quiñones que refería que los recurridos habían utilizado un rifle para asesinar a su marido resultara falsa o inexacta, somos del criterio que ello no necesariamente derrotaría la validez del resto de su testimonio.

La norma en nuestra jurisdicción es que el hecho de que existan contradicciones en la declaración de un testigo, de por sí, no justifica que se rechace dicha declaración en su totalidad si las contradicciones no son decisivas y si el resto del testimonio es suficiente para establecer la transacción delictiva, superar la presunción de inocencia y establecer la culpabilidad más allá de duda razonable. *Pueblo v. Chévere Heredia*, 139 D.P.R. 1, 15 (1995); *Pueblo v. Pagán, Ortiz*, 130 D.P.R. 470, 483 (1992); *Pueblo v. Rodríguez Román*, 128 D.P.R. 121, 129 (1991); *Pueblo v. Ramos y Alvarez*, 122 D.P.R. 287, 317 (1988); *Pueblo v. Rivera Robles*, 121 D.P.R. 858, 865 (1988); *Pueblo v. Mattei Torres*, 121 D.P.R. 600, 609 (1988).

La máxima *falsus in uno, falsus in omnibus* no autoriza a rechazar toda declaración de un testigo porque se haya contradicho o faltara a la verdad en parte de su testimonio. *Pueblo v. Pagán, Ortiz,* 130 D.P.R. a la pág. 483; *Pueblo v. Rivera Robles*, 121 D.P.R. a la pág. 865.

En el presente caso, es evidente que la versión de la Sra. Quiñones se encuentra corroborada por otros hallazgos en la escena del crimen, particularmente por la ocupación de numerosos proyectiles en el cadáver. El hecho de que el arma efectivamente utilizada por los recurridos pudiera haber sido un arma automática o de otro tipo distinta a rifle no significa, como tal, que se trate de un testimonio perjuro, cuya utilización por el Estado resulte constitucionalmente prohibida.

En *Pueblo v. Ortiz, Rodríguez*, según hemos visto, el Tribunal Supremo aclaró que aquella prueba que debe ser descubierta por el Ministerio Público durante la etapa de vista preliminar, no es aquélla relacionada a *"simples contradicciones de los testigos de cargo, sino de aquella prueba de calidad suficiente como para derrotar la estimación de causa probable para acusar"*. 149 D.P.R. a las págs. 379-380.

En el presente caso, no pensamos que el Informe de Balística hubiera sido suficiente para derrotar la estimación de causa probable para acusar. El Tribunal de Primera Instancia erró al desestimar la acusación.

Por los fundamentos expresados, se expide el auto solicitado y se revoca la resolución recurrida. Se declara sin lugar la Moción de Desestimación presentada por los recurridos. Se devolverá el caso al Tribunal de Primera Instancia para procedimientos consistentes con este dictamen.

Lo pronunció y lo manda el Tribunal y lo certifica la señora Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General