EL PUEBLO DE PUERTO RICO, peticionario, *v.* TRIBUNAL SUPERIOR DE PUERTO RICO, SALA DE HATO REY, HON. ERICK E. KOLTHOFF, JUEZ, demandado; FRANCISCO BETANCOURT GONZÁLEZ, interventor.

Número: O-74-301     Resuelto: 8 de diciembre de 1975

*Miriam Naveira de Rodón, Procuradora General,* y *Américo Serra* y *Ronaldo Rodríguez Ossorio, Procuradores Generales Auxiliares,* abogados del peticionario; *Roberto De Jesús Cintrón* y *Joaquín Peña Peña,* abogados del interventor.

EL JUEZ ASOCIADO SEÑOR IRIZARRY YUNQUÉ emitió la opinión del Tribunal.

A solicitud de la Procuradora General expedimos *certiorari* para revisar una resolución del Tribunal Superior, Sala de Hato Rey, que desestimó varias acusaciones formuladas contra Francisco Betancourt González, aquí interventor, por infracciones a la anterior Ley de Narcóticos (24 L.P.R.A. sec. 973 y siguientes). Basó el Tribunal Superior su dictamen, primero en que no le merecía crédito lo informado por el agente de la Policía, que en calidad de encubierto logró, según expuso en su declaración jurada, que el acusado y ahora interventor le vendiera determinadas cantidades de heroína en dos ocasiones; y, segundo, que la declaración jurada fue prestada por dicho agente siete meses después de haberse consumado las transacciones entre él y dicho acusado. Consideró el tribunal, respecto del segundo fundamento de su resolución, que si bien los alegados hechos delictivos ocurrieron antes de la vigencia de la actual Ley de Sustancias Controladas, la declaración jurada del agente no fue prestada hasta tres meses después que entró en vigor el Art. 523 de la actual Ley de Sustancias Controladas (24 L.P.R.A. sec. 2523), que fija para ello un plazo "no mayor de 120 horas siguientes a haberse consumado la transacción." Un examen de los autos nos hace

concluir que fue errónea la resolución del tribunal recurrido.

El agente Luis Olmo prestó dos declaraciones juradas el 21 de marzo de 1972. Relató en la primera cómo el 5 de agosto de 1971, valiéndose de un confidente, se puso en contacto con el acusado, dueño de una pescadería nombrada "La Tasca" en la avenida 65 de Infantería, donde éste le vendió determinada cantidad de heroína por $550. Relató en la segunda que el día 25 del mismo mes y año, acompañado de un confidente, llegó al Centro Comercial del Barrio San Martín en Río Piedras y, en un club nocturno llamado "Debonnaire", conoció a otro indivi- duo de nombre Manuel Martínez Hernández, con quien inició conversaciones para la compra de heroína por $500. Martínez Hernández, quien informó que por el momento no tenía "mate- rial", hizo cita con el agente para encontrarse ambos a las 7:00 de la noche en el mismo sitio con "su socio", quien la buscaría. A las 7:00 el agente y su confidente volvieron al Centro Co- mercial y, estando allí, llegó Martínez Hernández en un auto- móvil, acompañado de Betancourt, a quien le había comprado heroína el 5 de agosto, y le compró la cantidad interesada por los $500. En ambas ocasiones, el 5 y el 25 de agosto, el agente, más tarde en la noche de cada uno de esos días, informó sobre las transacciones a su supervisor, sargento Evaristo Rivera, a quien hizo entrega de lo comprado a Betancourt.

Luego de una vista preliminar celebrada ante un magis- trado del Tribunal de Distrito, éste dictaminó causa proba- ble contra Betancourt, pero no contra Martínez Hernández, para acusar al primero por poseer, transportar y vender, heroína. No conforme, y tras varios meses de inacción, el fiscal acudió a un Juez del Tribunal Superior, quien el 7 de marzo de 1973 halló causa probable contra Martínez Hernán- dez. No obstante, el fiscal nunca presentó acusación contra Martínez Hernández en el Tribunal Superior. [1] Las acusacio-

---

[1] Los autos no revelan las razones que tuvo el fiscal, primero para la dilación en acudir a un magistrado del Tribunal Superior en busca de una

nes contra Betancourt fueron presentadas en junio de 1972.

Luego de oportunas vistas sobre lectura de acusaciones, motivadas por la formulación de acusaciones enmendadas, y luego de varias posposiciones del juicio, el 3 de abril de 1974 Betancourt presentó ante el tribunal recurrido una petición de *habeas corpus* en que alegó estar recluido ilegalmente en la cárcel de Distrito de San Juan, sin que hubiera causa probable en su contra que justificara su detención. El tribunal recurrido consideró la petición como una moción de desestimación y celebró una vista para discutirla, luego de la cual dictó la resolución objeto del presente recurso. Una moción de reconsideración presentada por el fiscal, en que solicitó que se escuchara al agente para que expusiera las razones de la dilación en prestar la declaración jurada, fue rechazada de plano.

██ La Regla 64 de Procedimiento Criminal enumera las únicas causas para ordenar la desestimación de una acusación. *Suárez Sánchez v. Tribunal Superior*, 92 D.P.R. 507 (1965). Ninguna de ellas está aquí presente. Pero aún si procediera bajo el inciso (p) de dicha Regla, (²) la solicitud fue hecha tardíamente. Fue presentada el 3 de abril de 1974, diez y ocho meses después de quedar radicadas las acusaciones en el Tribunal Superior y de haberse formulado alegación de no culpabilidad. Una moción para desestimar al amparo de la Regla 64 "es un remedio que sólo puede concederse a petición del acusado, y de no solicitarlo, se declara renunciado." *Pueblo v. Tribunal Superior*, 94 D.P.R. 59, 63 (1967). Aplicando lo dis-

---

determinación de causa probable para acusar a Martínez Hernández y, en segundo lugar, para no haber presentado acusación contra éste, habiéndose determinado causa probable.

(²) La Regla 64, en su inciso (p), da el siguiente fundamento para desestimar una acusación o denuncia:

"(p) Que se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que se hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho."

puesto por la Regla 63, [3] la moción para desestimar a base del inciso (p) de la Regla 64 se renuncia si no se presenta "al hacerse alegación de no culpable o antes de alegar." Si bien el tribunal puede "permitir por causa justificada la presentación de dicha moción dentro de un período posterior razonable," aquí ni se justificó la tardanza, ni fue razonable una espera de diez y ocho meses después de registrarse alegación de no culpabilidad y solicitud de juicio por jurado.

■ Aparte de ser tardía, la desestimación no podía concederse porque el tribunal no creyera la declaración del agente Olmo. Una moción para desestimar, basada en la Regla 64 (p), procedería en ausencia total de prueba que demuestre la existencia de causa probable para creer que el acusado cometió el delito que se le imputa. *Vázquez Rosado* v. *Tribunal Superior*, 100 D.P.R. 592 (1972); *Martínez Cortés* v. *Tribunal Superior*, 98 D.P.R. 652 (1970).

■ Presentada una moción para desestimar basada en la Regla 64 (p), el tribunal de instancia puede, en el ejercicio de su discreción señalar una vista para entender y recibir prueba, o puede rechazarla de plano si de su faz y de las constancias en el expediente del caso, no resulta meritoria en cuanto al extremo de ausencia total de prueba. Debe recordarse que "La determinación de causa probable goza, como toda determinación judicial, de la presunción legal de correc-

[3] La Regla 63 de Procedimiento Criminal reza así:

"Excepto las defensas de falta de jurisdicción del tribunal y la de que no se imputa delito, las cuales podrán presentarse en cualquier momento, cualquier defensa u objeción susceptible de ser determinada sin entrar en el caso en su fondo se deberá promover mediante moción presentada al hacerse alegación de no culpable o antes de alegar, pero el tribunal podrá permitir por causa justificada la presentación de dicha moción dentro de un período posterior razonable. La moción incluirá todas las defensas y objeciones de tal índole de que pueda disponer el acusado. La omisión de presentar cualquiera de dichas defensas u objeciones constituirá una renuncia de la misma, pero el tribunal podrá eximir al acusado, por causa justificada, de los efectos de tal renuncia.

"Una moción para desestimar basada en lo provisto en la Regla 64 (n) (3) ó (4) deberá presentarse antes de ser llamado el caso para juicio."

ción" *Rabell Martínez* v. *Tribunal Superior*, 101 D.P.R. 796, 799 (1973). El mejor mecanismo que tiene un acusado para revisar una determinación de existencia de causa probable carente de prueba suficiente para establecer una probabilidad razonable de que cometió el delito imputádole, lo constituye la pronta ventilación del juicio, trámite que conforme a la Regla 64 (n) (4), salvo justa causa, debe ocurrir dentro de los ciento veinte (120) días siguientes a la presentación de la acusación o denuncia.

■ En el caso de autos la credibilidad del agente Olmo no era asunto que en las particulares circunstancias de este caso incumbía determinar en esta etapa, no siendo su versión ni inverosímil ni increíble. Sirvió de base para que dos magistrados distintos, uno del Tribunal de Distrito y otro del Tribunal Superior, determinaran causa probable para acusar a Betancourt el primero y a Martínez Hernández el segundo. El tribunal recurrido ni vio ni oyó al agente declarar. Y su declaración ni puede catalogarse de estereotipada, *Pueblo* v. *Ayala Ruiz*, 93 D.P.R. 704 (1966), ni adolece de "falsedad transparente". *Pueblo* v. *Rosario Torres*, 101 D.P.R. 840 (1973). Véase, además, *Rabell* v. *Alcaides Cárceles de P.R.*, 104 D.P.R. 96 (1975).

■ En cuanto a la tardanza en prestar las declaraciones juradas, convenimos con el tribunal recurrido que no se justificaba porque los alegados hechos delictivos ocurrieran antes de la vigencia del Art. 523 de la Ley de Sustancias Controladas. Como apuntamos en *Rosario Torres*, supra, no era necesaria acción legislativa para limitar a un término corto el plazo para prestar declaración jurada. No puede ampararse el ministerio público en la no vigencia del citado artículo. Sin embargo, aún si concediéramos que la no vigencia de dicha disposición excusaba la no prestación de las declaraciones juradas dentro de las 120 horas de consumarse las transacciones, no puede ignorarse el hecho de que, ya vigente dicha

disposición, el agente dejó pasar tres meses más sin prestar las declaraciones.

▆▆ Empero, el transcurso de las 120 horas, o la dilación en prestar la declaración jurada, no opera como llave automática para abrir la puerta a la desestimación de la acusación. El tráfico de drogas propicia las circunstancias para que se produzcan robos, atracos y asesinatos, y es motivo de constante preocupación para la comunidad puertorriqueña. Las fuerzas del orden público jamás tuvieron que enfrentarse a un reto más difícil que el de la invasión de que nuestra Isla es objeto por mar y aire en la importación de sustancias que destruyen la voluntad de nuestras juventudes y convierten en ruinas humanas a los infelices que han caído en el vicio de la adicción, enriqueciendo a su costa a los mercaderes de drogas. Los medios noticiosos del país a diario son elocuente expresión de la gravedad del mal. Los recursos a disposición de estos mercaderes, su inescrupulosidad y sus insospechadas argucias ponen a prueba diariamente a nuestra Policía, que tiene que recurrir a nuevos y sutiles, y exigentes métodos de investigación para descubrirlos y hacerlos responder en nuestros tribunales. Por ello, ningún acusado de mercadear con drogas debe tener un derecho adquirido a que se desestime la causa en su contra porque el agente denunciante no prestara la declaración jurada que requiere la Ley dentro del término en ella especificado. Al fiscal debe brindársele, si la pide, la oportunidad de ofrecer prueba que explique la tardanza. La propia Ley de Sustancias Controladas, en su Art. 523, antes citado, señala la posibilidad de que exista justa causa para la dilación. El tecnicismo no puede ser obstáculo infranqueable para que se traiga a juicio al imputado y se investigue a fondo y se decida si cometió los hechos delictivos. Véase *Rabell* v. *Alcaides Cárceles de P.R.*, supra.

*Se dictará sentencia para revocar la resolución del tribunal recurrido y se devolverán los autos a dicho tribunal para ulteriores procedimientos consistentes con lo aquí expresado.*