ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL VI

| EL PUEBLO DE PUERTO RICO<br><br>RECURRIDA<br><br>v.<br><br>CARLOS DÍAZ OLMEDO<br><br>PETICIONARIO | KLCE202500594 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Carolina<br><br>Civil Núm.:<br>FVI2025G0001<br>FLA2025G0005<br>FLE2025G0009<br><br>Sobre:<br>ART. 93(A) CP;<br>ART. 6.06 Ley 168;<br>ART. 3.2(c) Ley 54 |

Panel integrado por su presidenta, la Jueza Ortiz Flores, la Jueza Aldebol Mora y la Jueza Boria Vizcarrondo

Ortiz Flores, Jueza Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 9 de septiembre de 2025.

Comparece el señor Carlos Diaz Olmedo (Sr. Diaz Olmedo; peticionario) mediante un recurso de Certiorari en el que recurre de una Resolución emitida el 27 de marzo de 2025 y notificada el 1 de abril de 2025 por el Tribunal de Primera Instancia, Sala de Carolina (TPI), la cual denegó una moción de desestimación bajo la Regla 64(p) de Procedimiento Criminal.

Adelantamos que se deniega la expedición del auto de *certiorari* y se declara No Ha Lugar la *Moción Solicitando Paralización de los Procedimientos en Auxilio de Jurisdicción.*

**I**

Por hechos acontecidos el 14 de agosto de 2024, el Ministerio Público presentó, el 16 de agosto de 2024, tres (3) denuncias contra el Sr. Díaz Olmedo, por la comisión de los siguientes delitos graves: **Asesinato en Primer Grado, Artículo 93(A) del Código Penal de Puerto Rico**, 33 LPRA sec. 5142[1]; **Portación y Uso de Armas Blancas**,

---

[1] Apéndice de la *Petición de Certiorari*, Anejo II.

**Artículo 6.06 de la Ley de Armas**, 25 LPRA sec. 466e[2]; y **Maltrato Agravado**, **Artículo 3.2(C) de la Ley para la Prevención e Intervención con la Violencia Doméstica**, 8 LPRA sec. 632.[3] El contenido de las denuncias se cita como sigue:

**Artículo 93(A) del Código Penal de Puerto Rico:**

CARLOS DÍAZ OLMEDO, EN FECHA Y HORA ANTES MENCIONADA, EN LA CALLE SAN PATRICIO, #142, SECTOR VILLA CRISTIANA EN LOIZA, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE CAROLINA, A PROPÓSITO, Y CON CONOCIMIENTO, LE OCASIONÓ LA MUERTE A SU HERMANA ZULEMA MATOS OLMEDO, CONSISTENTE EN QUE EL IMPUTADO UTILIZANDO UN CUCHILLO APUÑALÓ A LA VÍCTIMA, EN EL ÁREA DE LA CLAVÍCULA DEL LADO IZQUIERDO DEL CUELLO, CAUSÁNDOLE UNA HERIDA QUE LE OCASIONÓ LA MUERTE.

EL ARMA BLANCA EN CUESTIÓN SE DESCRIBE COMO UN CUCHILLO DE LOS DE COCINA, FILOSO, CON HOJA DE METAL Y LARGO, EL CUAL FUE OCUPADO EN LA ESCENA.

HECHOS CONTRARIOS A LA LEY.

**Portación y Uso de Armas Blancas**, **Artículo 6.06 de la Ley de Armas:**

CARLOS DÍAZ OLMEDO, EN FECHA Y HORA ANTES MENCIONADA, EN LA CALLE SAN PATRICIO, #142, SECTOR VILLA CRISTIANA EN LOIZA, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE CAROLINA, A PROPÓSITO[,] Y CON CONOCIMIENTO, SIN MOTIVO JUSTIFICADO, UTILIZÓ UN CUCHILLO, EN LA COMISIÓN DE LOS DELITOS DE ASESINATO CONTRA SU HERMANA ZULEMA MATOS OLMEDO Y MALTRATO AGRAVADO CONTRA SU PAREJA CONSENSUAL YORELYS RODRÍGUEZ LAZU.

EL ARMA BLANCA EN CUESTIÓN SE DESCRIBE COMO UN CUCHILLO DE LOS DE COCINA, FILOSO, CON HOJA DE METAL Y LARGO. EL CUCHILLO NO SE UTILIZÓ EN SU USO ACOSTUMBRADO COMO INSTRUMENTO PROPIO DEL ARTE, DEPORTE, PROFESIÓN, OCUPACIÓN, OFICIO O CONDICIÓN DE SALUD INCAPACIDAD O INDEFENSIÓN. EL ARMA FUE OCUPADA EN LA ESCENA.

HECHOS CONTRARIOS A LA LEY.

**Maltrato Agravado**, **Artículo 3.2(C) de la Ley para la Prevención e Intervención con la Violencia Doméstica:**

---

[2] *Id.*, Anejo I.
[3] *Id.*, Anejo III.

CARLOS DÍAZ OLMEDO, EN FECHA Y HORA ANTES MENCIONADA, EN LA CALLE SAN PATRICIO, #142, SECTOR VILLA CRISTIANA EN LOIZA, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE CAROLINA, A PROPÓSITO Y CON CONOCIMIENTO EMPLEÓ FUERZA FÍSICA CONTRA LA PERSONA DE LA SRA. YORELYS RODRÍGUEZ LAZU, PERSONA CON QUIEN SOSTENÍA UNA RELACIÓN Y CON QUIEN NO PROCREÓ HIJOS, PARA CAUSARLE DAÑO FÍSICO A SU PERSONA; CONSISTENTE EN QUE EL AQUÍ IMPUTADO APUÑALÓ A LA PERJUDICADA CON UN ARMA BLANCA EN EL COSTADO IZQUIERDO, PROVOCÁNDOLE UNA HERIDA ABIERTA QUE REQUIRIÓ INTERVENCIÓN MÉDICA Y PUNTOS DE SUTURA. EL AGRAVANTE CONSISTE EN QUE SE COMETIÓ CON UN ARMA MORTÍFERA.

EL ARMA BLANCA EN CUESTIÓN SE DESCRIBE COMO UN CUCHILLO DE LOS DE COCINA, FILOSO, CON HOJA DE METAL Y LARGO.

CARLOS DÍAZ OLMEDO, EN FECHA Y HORA ANTES MENCIONADA, EN LA CALLE SAN PATRICIO, #142, SECTOR VILLA CRISTIANA EN LOIZA, PUERTO RICO, QUE FORMA PARTE DE LA JURISDICCIÓN DEL TRIBUNAL DE PRIMERA INSTANCIA, SALA DE CAROLINA, A PROPÓSITO[,] Y CON CONOCIMIENTO, SIN MOTIVO JUSTIFICADO, UTILIZÓ UN CUCHILLO, EN LA COMISIÓN DE LOS DELITOS DE ASESINATO CONTRA SU HERMANA ZULEMA MATOS OLMEDO Y MALTRATO AGRAVADO CONTRA SU PAREJA CONSENSUAL YORELYS RODRÍGUEZ LAZU.

El 16 de enero de 2025 se celebró la vista preliminar[4] en la cual, se escucharon los testimonios de la Agente Miriam Cardona Padilla (Agente Cardona Padilla), el Inspector José M. Herrera Fontánez (Inspector Herrera Fontánez) y el Agte. Edgar M. Ribot Ruiz (Agente Ribot Ruiz); estos testigos contestaron las preguntas del Ministerio Público y del contrainterrogatorio de la Defensa. En esencia, estos testigos declararon lo siguiente:

**Agente Cardona Padilla**

A eso de las 3:00pm del 14 de agosto de 2024, el agente Ribot la llamó para que tomara las fotos de un caso de asesinato. Tomó los datos y se entrevistó con otro agente. Tomó fotos a una herida en el lado izquierdo del costado con puntos de sutura.

A preguntas de la defensa indicó que en las fotos tomadas no aparece la fecha en la que tomó las mismas. La agente no reveló las fotos y las mismas se archivan en la tarjeta de

---

[4] *Id.*, Anejo VI.

la cámara digital y son, posteriormente, borradas de la tarjeta.

El agente Ribot le indicó que la dama se llamaba Yoellys Rodríguez; pero no la había visto ese día. No corroboró el nombre de la dama.[5]

### Inspector Herrera Fontánez

El Insp. Herrera Fontánez declaró que el 14 de agosto de 2024, mientras desempeñaba sus funciones para la Policía Municipal de Río Grande, recibió una radiocomunicación a eso de las 5:30 — 5:45 a.m. sobre unas personas apuñaladas que se encontraban en el Centro de Diagnóstico y Tratamiento de Río Grande ("CDT"). Sostuvo que llegó al CDT en menos de un minuto y que, al entrar a la sala de emergencias, se encuentra con la Sra. Yorelys Rodríguez Lazu ("señora Rodríguez Lazu" o "expareja") quien vestía una bata azul bañada en sangre. Luego, relató que la señora Rodríguez Lazu le vociferó "arréstalo, que acaba de apuñalarme a m[í] y a la hermana", mientras señalaba un pasillo. Ante esto, narró que se acercó a la expareja, para asegurarse que se trataba de una de las personas perjudicadas, y que esta le mostró una herida que tenía en el lado izquierdo del costado y le dijo "mira, me apuñaló aquí". Atestó que observó un orificio pequeño en el costado izquierdo de la señora Rodríguez Lazu, el cual tenía gotas de sangre. Indicó que ambos comenzaron a caminar hacia el lugar donde esta le señalaba. Mientras esto ocurría, la dama seguía alterada y repetía lo expresado anteriormente.

Así, el Insp. Herrera Fontánez expresó que continuó caminando en busca de la otra persona herida, pues recibió la comunicación de que había múltiples personas apuñaladas, lo que implicaba más de una víctima. Declaró que, al llegar al final del pasillo, se topó con una persona sentada que hacía manifestaciones, que por la distancia, este no pudo escuchar. Que la señora Rodríguez Lazu le dijo, asfixiada, "es él, él fue quien me apuñaló y apuñaló a la hermana". Añadió que, en ese momento, la persona sentada comenzó a manifestar —en múltiples ocasiones— "yo lo hice, yo lo hice". Acto seguido, sostuvo que procedió a arrestar a tal persona y a darle las debidas advertencias de ley. Finalmente, este identificó en corte abierta al señor Díaz Olmedo como la persona allí sentada, que hizo tales manifestaciones, y a quien arrestó.[6]

### Agte. Ribot Ruiz

El agente Ribot Ruiz declaró que actualmente está adscrito a la División de Homicidios del Cuerpo de Investigaciones Criminales de Carolina ("CIC") y que este fungió como agente investigador del presente caso. Así, narró que el 14 de agosto de 2024, mientras se dirigía hacia su trabajo, el Sgto. Brito lo activó a través de una llamada telefónica para que investigara unos hechos ocurridos en la Calle San Patricio, Villa Cristiana, Loíza. El sargento le ordenó que fuera a la Comandancia de Carolina para coordinar la investigación de tales hechos. Sostuvo que, al llegar a eso

---

[5] *Petición de certiorari*, págs. 2-3.
[6] *Escrito en cumplimiento de orden*, pág .4.

de las 7:00 a.m., el sargento le expresó que, con relación al incidente, había una persona muerta en el Hospital UPR Federico Trilla y una persona arrestada en el CDT. Sostuvo que a las 8:00 a.m., el señor Díaz Olmedo fue transportado a la Comandancia de Carolina; en este momento el agente Ribot Ruiz identificó en corte abierta al peticionario como la persona arrestada que recibió en la Comandancia de Carolina.

Relató que el señor Díaz Olmedo fue trasladado a una cuarto de evidencia del CIC para ser entrevistado. En cuanto esto, explicó que en dicho cuarto se encontraban el Agte. Carrión, el peticionario y él. Que ambos agentes se encontraban desarmados y que el señor Díaz Olmedo, aunque estaba llorando, se encontraba en buen estado de salud y condición física. Añadió que el peticionario pudo decirle correctamente su nombre completo, fecha de nacimiento, seguro social y la fecha en la cual se le estaba entrevistando. Además, indicó que se le preguntó al peticionario si estaba bajo los efectos de algún medicamento o sustancia controlada en ese momento, y este último contestó que no. Posteriormente, declaró que —al tratarse en ese momento de un sospechoso de delito— le leyó las debidas advertencias de ley, mientras que el peticionario también ejerció su derecho de leer tales advertencias y expresó haberlas entendido. Aseveró que, acto seguido, el señor Díaz Olmedo marcó en la PPR 615.4 ("Advertencias Miranda para persona sospechosa en custodia"), ejerció su derecho a leer las advertencias, entendió tales derechos, renunció a estos de forma voluntaria y con pleno conocimiento de estos y plasmó su firma.

Así, una vez renunció libre, voluntaria e inteligentemente a los derechos que le asistían, el peticionario declaró sobre lo sucedido el 14 de agosto de 2024. En particular, el señor Díaz Olmedo hizo las siguientes declaraciones:

Narró que, en la madrugada del 14 de agosto de 2024, este compartía con su hermana, la Sra. Zulema Matos Olmedo ("señora Matos Olmedo" o "hermana") y la señora Rodríguez Lazu en la residencia de su madre en Loíza. Que él y su expareja se iban a ir del lugar y que su hermana se encontraba en un cuarto a la derecha de la casa. Explicó que, en ese momento, se paró por el lado de la nevera, tomó un cuchillo de la cocina, entró al cuarto donde estaba su hermana y la apuñaló en el cuello. Explicó que después apuñaló igualmente a la señora Rodríguez Lazu por el costado. Que su hermana le dijo: "Bulu, ¿qué me hiciste?", cayó encima de él y luego cayó al suelo. Que su [expareja] comenzó a decir: "ayuda, ayuda" "Carlos, ¿qué tú hiciste?". Finalmente alegó que lo hizo porque escuchó voces que le dijeron que lo hiciera.

El agente Ribot Ruiz atestó que, una vez culminada la entrevista, se personó a lugar de los hechos en donde se encontraba el Agte. Emanuelle Olivo Vélez y el personal del Instituto de Ciencias Forenses. Indicó que la escena estaba debidamente custodiada por la Policía y que, una vez llegó, observó manchas de sangre y de arrastre. Particularmente, expresó que, en el último cuarto de la residencia, a mano derecha, pudo observar manchas de sangre en la pared, en

el suelo y en la cama. Añadió que, en el pasillo de la residencia, observó una chancleta con sangre y un cuchillo con hoja de metal que también tenía sangre. Explicó que de la escena fueron recuperadas muestras de sangre y el cuchillo antes mencionado. Finalmente, declaró que acto seguido se trasladó al CDT en donde entrevistó a la señora Rodríguez Lazú y al Insp. Herrera Fontánez. También fueron admitidos en evidencia la Hoja de Identificación del Cadáver y el Informe Médico Forense relacionados a la manera y circunstancias de la muerte de la señora Matos Olmedo. Del Informe Médico Forense surge que en la autopsia practicada a la hermana, esta presentaba cuatro heridas de arma blanca en distintas áreas del cuerpo, incluyendo una herida fatal en el área del tórax. Así, en cuanto a la causa y la manera de la muerte, el mencionado informe concluye que la causa de muerte fue una herida de arma blanca en el tórax y que la manera de la muerte fue mediante un homicidio[7].

Luego de recibirse los testimonios del Inspector Herrera Fontánez y del Agente Ribot Ruiz, el TPI encontró que existía causa probable para acusar al peticionario y, así, el 17 de enero de 2025 el Ministerio Público presentó tres pliegos acusatorios por los delitos imputados en las denuncias.

Inconforme, el señor Díaz Olmedo presentó ante el foro primario una *Moción de Desestimación al Amparo de la Regla 64(p)*[8], en la cual argumenta que hubo ausencia total de prueba respecto a la intención criminal requerida por los delitos imputados y que violaron sus derechos procesales en la medida en que se desfiló lo que alegó ser prueba de referencia. El Ministerio Público se opuso mediante una *Moción en Oposición a Solicitud de Desestimación al Amparo de la Regla 64(P) de las de Procedimiento Criminal.*[9] Además, el peticionario presentó una *Réplica a Moción en Oposición a Solicitud de Desestimación al Amparo de la Regla 64 (P) de Procedimiento Criminal*,[10] en la que argumenta, que el Ministerio Público descubrió una declaración jurada de la testigo la Sra. Yorelys Rodríguez Lazu, persona que no declaró en la vista preliminar, algunos días después de la presentación de su moción de desestimación. Reclamó, que esa declaración jurada contenía evidencia exculpatoria y que el no haberla descubierto, previo a la celebración de la vista

---

[7] *Escrito en cumplimiento de orden*, págs. 4-6.
[8] Apéndice de la *Petición de Certiorari*, Anejo XV.
[9] *Id.*, Anejo XVI.
[10] *Id.*, Anejo XVII.

preliminar, constituía una violación a sus derechos procesales, por lo cual reitera su solcitud de desestimación bajo la Regla 64 (P) de Procedimiento Criminal.

Así, los días 19 y 20 de marzo de 2025, el foro de primera instancia celebró una vista argumentativa, donde las partes presentaron sus argumentos sobre la solicitud de desestimación presentada por el señor Díaz Olmedo.  En tal vista, la defensa reiteró los argumentos presentados en las mociones anteriores y el Ministerio Público se opuso conforme a los testimonios desfilados en la vista preliminar, y que la admisión de las declaraciones de la señora Rodríguez Lazu, por medio del testimonio del Insp. Herrera Fontánez, no violentó ningún derecho procesal del peticionario.  Es decir, que se trata de manifestaciones no testimoniales y espontáneas por excitación. Señaló que no existía obligación de entregar la declaración jurada de la expareja antes de la celebración de la vista preliminar y que tal descubrimiento previo no hubiese alterado la determinación de causa probable del foro primario.

El 27 de marzo de 2025, el TPI emitió una *Resolución*, mediante la cual determinó que no hubo ausencia total de prueba de los delitos imputados.  Además, determinó al evaluar una declaración jurada sobre la cual alegaba el Sr. Díaz Olmedo que constituía prueba exculpatoria descubierta luego de la vista preliminar.  Concluyó que la presentación de esta en la vista preliminar no hubiese afectado la determinación de causa probable.  Por lo anterior, el foro recurrido denegó la solicitud del peticionario y ordenó la continuación de los procedimientos.

Finalmente, el peticionario presentó una *Moción Solicitando Reconsideración a Resolución sobre la Regla 64 (P) de Procedimiento Criminal*, la cual fue denegada por el foro primario mediante una *Orden* emitida y notificada el 30 de abril de 2025.

Aún inconforme, el 30 de mayo de 2025, el peticionario recurrió ante este Tribunal de Apelaciones mediante el recurso de epígrafe y expuso los siguientes señalamientos de error:

A. ERRÓ EL HONORABLE TRIBUNAL DE PRIMERA INSTANCIA AL DECLARAR SIN LUGAR LA MOCIÓN DE DESESTIMACIÓN PRESENTADA POR LA DEFENSA DEL SEÑOR CARLOS DÍAZ OLMEDO, A PESAR QUE DE LA PRUEBA APORTADA POR EL MINISTERIO PÚBLICO, SURGE PRUEBA DEL ESTADO MENTAL DEL PETICIONARIO LO CUAL LE IMPOSIBILITÓ FORMULAR LA INTENCIÓN REQUERIDA EN EL DELITO IMPUTADO, POR LO QUE HUBO AUSENCIA TOTAL DE PRUEBA.

B. ERRÓ EL TPI AL DECLARAR SIN LUGAR LA SOLICITUD DE DESESTIMACIÓN PRESENTADA POR LA DEFENSA, A PESAR QUE, LOS TESTIGOS CUYOS TESTIMONIOS FUERON VERTIDOS DURANTE LA VISTA PRELIMINAR, NO TENÍAN CONOCIMIENTO PERSONAL DE LOS HECHOS Y LA TESTIGO PRESENCIAL NO ESTUVO SUJETA A CONTRAINTERROGATORIO, TODA VEZ QUE NO ESTUVO PRESENTE, VIOLENTANDOSE DE ESA MANERA EL DERECHO A CONTRAINTERROGATORIO Y REPRESENTACIÓN LEGAL ADECUADA QUE COBIJA A NUESTRO REPRESENTADO.

C. SE VULNERÓ EL DEBIDO PROCESO DE LEY DE NUESTRO REPRESENTADO, CARLOS DÍAZ OLMEDO, CUANDO EL MINISTERIO PÚBLICO ENTREGÓ, CON POSTERIORIDAD A LA VISTA PRELIMINAR, LA DECLARACIÓN JURADA DE LA ÚNICA TESTIGO PRESENCIAL DE LOS HECHOS QUE CONTIENE PRUEBA FAVORABLE A LA DEFENSA, ESTO, CONTRARIO A LA JURISPRUDENCIA APLICABLE Y VIOLATORIO DE LAS GARANTÍAS CONSTITUCIONALES QUE COBIJAN AL PETICIONARIO, TALES COMO EL DERECHO A CONTRAINTERROGAR EFECTIVAMENTE 'A LOS TESTIGOS ADVERSOS Y LA REPRESENTACIÓN LEGAL ADECUADA.

Examinada la *Petición de Certiorari* y sus anejos, incluyendo las grabaciones de la Vista Preliminar y la Vista Argumentativa, y la comparecencia del Procurador General en representación del Pueblo de Puerto Rico, con el escrito titulado *Escrito en cumplimiento de orden* en representación del Pueblo de Puerto Rico, el 23 de junio de 2025, en oposición al recurso, resolvemos.

**II**

**A. Certiorari**

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders at al. v. BBVAPR*, 185 DPR 307, 337-

338 (2012); *García v. Padró*, 165 DPR 324, 334-335 (2005); *Negrón v. Srio. de Justicia*, 154 DPR 79, 90-92 (2001). Esta discreción, ha sido definida en nuestro ordenamiento jurídico como una forma de razonabilidad aplicada al discernimiento judicial para llegar a una conclusión justiciera. No significa poder actuar en una forma u otra, haciendo abstracción del resto del derecho, porque, ciertamente, eso constituiría un abuso de discreción. *Negrón v. Srio. de Justicia*, *supra*, pág. 91.

Por consiguiente, para determinar si procede la expedición de un recurso de *certiorari* en el que se recurre de una resolución interlocutoria, debemos acudir a lo dispuesto en la Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 40, que lee como sigue:

El tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari*:

A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.

B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

Los criterios antes transcritos nos sirven de guía para, de manera sabia y prudente, tomar la determinación de si procede o no intervenir en el caso en la etapa del procedimiento en que se encuentra. *Torres*

*Martínez v. Torres Ghigliotty*, 175 DPR 83, 97 (2008). De no encontrarse presente alguno de los criterios anteriormente enumerados en un caso que se nos presenta, no procede nuestra intervención. Así pues, es norma reiterada que este foro intermedio no habrá de intervenir con el ejercicio de la discreción del Tribunal de Primera Instancia, "salvo que se demuestre que hubo un craso abuso de discreción, prejuicio, error manifiesto o parcialidad." *Trans-Oceanic Life Ins. v. Oracle Corp.*, 184 DPR 689, 709 (2012), citando a *Lluch v. España Service Sta.,* 117 DPR 729, 745 (1986).

### B. Vista preliminar

La Regla 23 de las de Procedimiento Criminal, 34 L.P.R.A. Ap. II, R. 23 dispone sobre la celebración de vista preliminar como sigue:

(a) **Cuándo se celebrará**. Se celebrará una vista preliminar en aquel caso en que se imputare a una persona un delito grave (*felony*). En estos casos deberá citársele para esa vista por lo menos cinco (5) días antes de su celebración. En los casos en que se hiciere constar, de acuerdo con la Regla 22(c), que la persona no puede obtener asistencia legal, el magistrado correspondiente le nombrará abogado y el nombre de éste se incluirá en la citación para la vista preliminar. El magistrado comunicará dicha vista al abogado.

(b) **Renuncia**. Luego de haber sido citada, la persona podrá renunciar a la vista preliminar mediante escrito al efecto firmado por ella y sometido al magistrado antes de comenzar la vista o personalmente en cualquier momento durante la vista. Si la persona renunciare a la vista o no compareciere a ella luego de haber sido citada debidamente, el magistrado la detendrá para que responda por la comisión de un delito ante la sala correspondiente del Tribunal de Primera Instancia.

(c) **Procedimiento durante la vista**. Si la persona compareciere a la vista preliminar y no renunciare a ella, el magistrado deberá oír la prueba. La persona podrá contrainterrogar los testigos en su contra y ofrecer prueba a su favor. El fiscal podrá estar presente en la vista y podrá también interrogar y contrainterrogar a todos los testigos y ofrecer otra prueba. Al ser requerido para ello el fiscal pondrá a disposición de la persona las declaraciones juradas que tuviere en su poder de los testigos que haya puesto a declarar en la vista. Si a juicio del magistrado la prueba demostrare que existe causa probable para creer que se ha cometido un delito y que la persona lo cometió, el magistrado detendrá inmediatamente a la persona para que responda

por la comisión de un delito ante la sección y sala correspondiente del Tribunal de Primera Instancia; de lo contrario exonerará a la persona y ordenará que sea puesta en libertad. El magistrado podrá mantener en libertad a la persona bajo la misma fianza o determinación de fianza diferida, libertad bajo propio reconocimiento o libertad bajo custodia de tercero o bajo las mismas condiciones que hubiere impuesto un magistrado al ser arrestada, o podrá alterar las mismas o imponer una fianza o tomar una determinación de fianza diferida, libertad bajo propio reconocimiento, libertad bajo custodia de tercero o condiciones de acuerdo con la Regla 218(c) si éstas no se le hubiesen impuesto, y si a juicio del magistrado ello fuere necesario. No obstante lo anterior el magistrado no podrá alterar la fianza fijada o la determinación de fianza diferida, libertad bajo propio reconocimiento o libertad bajo custodia de tercero o condiciones impuestas por un magistrado de categoría superior, a menos que en la vista preliminar se determine causa probable por un delito inferior al que originalmente se le imputó a la persona. Después de que terminare el procedimiento ante él, el magistrado remitirá inmediatamente a la secretaría de la sección y sala correspondiente del Tribunal de Primera Instancia todo el expediente relacionado con dicho procedimiento, incluyendo cualquier fianza prestada. En el expediente se hará constar la fecha y el sitio de la vista preliminar, las personas que a ella comparecieron y la determinación del magistrado.

La vista preliminar será pública a menos que el magistrado determine, previa solicitud del imputado, que una vista pública acarrea una probabilidad sustancial de menoscabo a su derecho constitucional a un juicio justo e imparcial, y que no hay disponibles otras alternativas menos abarcadoras y razonables que una vista privada para disipar tal probabilidad. En tales casos la decisión del magistrado deberá fundamentarse en forma precisa y detallada.

También se podrá limitar el acceso a la vista preliminar cuando el magistrado determine, previa solicitud a tales efectos, que tal limitación es necesaria para proteger cualquier otro interés de naturaleza apremiante y que no existen otras alternativas menos abarcadoras y razonables. La decisión del magistrado deberá fundamentarse en forma precisa y detallada.

Se dispone que el magistrado deberá limitar el acceso a la vista preliminar, previa solicitud del fiscal, en aquellos casos en que éste interese presentar el testimonio de un agente encubierto o un confidente que aún se encuentre en esas funciones o cuando esté declarando la víctima de un caso de violación o actos impúdicos o lascivos.

El Tribunal Supremo de Puerto Rico ha señalado sobre la vista preliminar lo siguiente:

(1)     el objeto central de la vista preliminar no es hacer una adjudicación en los méritos en cuanto a la culpabilidad o inocencia del acusado;

(2)     aunque se trata de una función propiamente judicial, no es ""un mini juicio";

(3)     el fiscal no tiene que presentar toda la prueba que posea;

(4)     la vista está encaminada a proteger a la persona imputada a través de un filtro o cedazo judicial por el cual el Estado tiene que pasar prueba, y demostrar si está justificado o no a intervenir con la libertad de un ciudadano y someterlo a los rigores y contingencias de un juicio plenario, y

(5)     una vez se demuestra y se justifica esta intervención, la vista ha cumplido su propósito de ley. *Pueblo v. Rodríguez Aponte*, 116 D.P.R. 653, 665 (1985).

El propósito principal de la vista preliminar "es evitar que una persona sea sometida injustificadamente a los rigores de un proceso penal" y esto "se logra mediante la exigencia de que el Estado presente *alguna* prueba sobre los elementos constitutivos del delito y sobre la conexión del imputado con su comisión." *Pueblo v. Rivera Vázquez*, 177 D.P.R. 868, 875 (2010). Asimismo, la Regla 23, *supra*, provee para que se permita a la persona imputada de delito que "presentar prueba a su favor y contrainterrogar a los testigos de cargo." *Id*. Luego, corresponde al foro de instancia adjudicar si existe causa probable para acusar. *Id*.

Se trata de una vista "que permite evaluar, tanto la validez del arresto, como las probabilidades de que la persona sea culpable del delito grave que se le imputa" sin hacer una adjudicación en los méritos, es decir, no es un "mini juicio". *Pueblo v. Rivera Vázquez, supra*, págs. 875-876.

La resolución emitida por el TPI que determina la existencia de causa probable luego de celebrar una vista preliminar, "concede la debida autorización al Ministerio Público para presentar la acusación de rigor." *Pueblo v. Rivera Vázquez, supra*, pág. 876. Esta determinación

"goza, como todo dictamen judicial, de presunción legal de corrección." *Pueblo v. Rodríguez Aponte, supra,* pág. 664, citando a *Pueblo v Tribunal Superior*, 104 D.P.R. 454,459 (1975); *Rabell Martínez v. Tribunal Superior*, 101 D.P.R. 796, 798-799 (1973). Sin embargo, la persona imputada de delito puede intentar rebatir esa presunción de corrección mediante la presentación de una moción de desestimación bajo la Regla 64 (p) de Procedimiento Criminal "con el fin de demostrar que existe *ausencia total de prueba* en cuanto a la probabilidad de que se haya cometido el delito imputado - que no hay prueba sobre uno o todos los elementos del delito - o sobre la conexión del acusado con el delito *imputado.*" *Pueblo v. Rivera Alicea*, 125 D.P.R. 37, 42 (1989) citando a *Vázquez Rosado v. Tribunal Superior*, 100 D.P.R. 592, 594-595 (1972); *Pueblo v. Tribunal Superior*, 104 D.P.R. 454 (1970); *Pueblo v. González Pagán*, 120 D.P.R. 684 (1988). Luego, corresponde al TPI determinar si la prueba presentada en la vista preliminar por el Ministerio Público y la defensa "establece *la probabilidad* de que estén presentes *todos* los elementos, a saber, la probabilidad de que se haya cometido tal delito imputado" y "si hay prueba que *probablemente* conecte al imputado con el delito probablemente cometido." *Pueblo v. Rivera Alicea, supra,* págs. 42-43.

### C. Regla 64(p) de Procedimiento Criminal

Una vez presentadas las acusaciones, la Regla 64 de las Reglas de Procedimiento Criminal, 34 LPRA Ap. II, establece los fundamentos por los cuales un acusado puede solicitar su desestimación. En lo pertinente a este caso, dispone lo siguiente:

> La moción para desestimar la acusación o denuncia, o cualquier cargo de las mismas solo podrá basarse en uno o más de los siguientes fundamentos:
>
> […]
>
> (p) Que se ha presentado contra el acusado una acusación o denuncia, o algún cargo de las mismas, sin que hubiere determinado causa probable por un magistrado u ordenado su detención para responder del delito, con arreglo a la ley y a derecho.

Los fundamentos del inciso (p) permiten que el acusado pueda impugnar la determinación de causa bajo dos premisas: (1) insuficiencia de la prueba, o (2) cuando se haya violado algún derecho procesal que se tenía que garantizar en la vista correspondiente. *Pueblo v. Negrón Nazario*, 119 DPR 720, 735-736 (2014). Así, pues, nuestro Máximo Foro local estableció que el imputado puede atacar la determinación de causa probable y rebatir la presunción de corrección mediante una moción de desestimación al amparo de la Regla 64(p) de Procedimiento Criminal, *supra*, en aquellas instancias en que entienda que el Estado no satisfizo la carga probatoria que requiere la etapa de vista preliminar. *Pueblo v. Nieves Cabán*, 201 DPR 853, págs. 866-867(2019). Además, pautó que el foro primario, en el ejercicio de su sana discreción, puede celebrar una vista para entender y recibir prueba, o puede rechazarla de plano si de su faz y de las constancias en el expediente del caso, no resulta meritoria en cuanto al extremo de ausencia total de prueba. *Pueblo v. Tribunal Superior*, 104 DPR 454, 459 (1974). En esa ocasión, el Tribunal Supremo de Puerto Rico aprovechó la oportunidad para recordarnos que el mejor mecanismo que tiene un acusado para revisar una determinación de existencia de causa probable carente de prueba suficiente para establecer una probabilidad razonable de que cometió el delito imputado, lo constituye la pronta ventilación del juicio, trámite que conforme a la Regla 64 (n) (4), salvo justa causa, debe ocurrir dentro de los ciento veinte (120) días siguientes a la presentación de la acusación o denuncia. *Id.* pág. 460.

### III

El Sr. Díaz Olmedo nos señala que el TPI erró al denegar su *Moción de Desestimación al Amparo de la Regla 64(p)*. En particular, sostiene que el tribunal debió desestimar las acusaciones en su contra debido a que hubo ausencia total de prueba respecto a la intención criminal del imputado y a que se violaron sus derechos procesales durante la celebración de la vista preliminar. Sobre este segundo punto,

el peticionario entiende que el foro primario erró al admitir en evidencia las declaraciones de la señora Rodríguez Lazu mediante el testimonio del Insp. Herrera Fontánez, esto pues argumenta que las mismas constituyen prueba de referencia inadmisible.

Es norma reconocida que los foros apelativos no debemos intervenir con las determinaciones realizadas por los tribunales inferiores cuando estas se enmarquen en su discreción. Sólo por excepción, podemos intervenir con estas. Esta excepción surge cuando se demuestra que el TPI actuó con prejuicio, parcialidad, que se equivocó en la aplicación de cualquier norma procesal o que incurrió en craso abuso de discreción. En lo pertinente, se ha reconocido que la determinación de causa probable para acusar goza de una presunción de corrección y sólo ante una situación de ausencia total de prueba es que procedería sustituir el criterio del foro primario.

Evaluada la *Resolución* recurrida, somos del criterio que esta no cumple con los criterios establecidos en la Regla 40, *supra*. No vemos que, en el manejo del caso ante el TPI, se incurrió en un abuso de discreción o que este haya actuado bajo prejuicio o parcialidad. Tampoco se demostró que el TPI se haya equivocado en la interpretación o aplicación de una norma procesal y que, intervenir en esta etapa, evitaría un perjuicio sustancial contra el peticionario. Por consiguiente, no nos vemos persuadidas a intervenir en esta etapa de los procedimientos.

Por otro lado, debemos recordarles que el *quantum* de prueba requerido en una Vista Preliminar es de una *scintilla*, por consiguiente, el Ministerio Público no viene obligado a presentar toda la evidencia, ya que no se trata de un mini juicio. Solamente se requiere demostrar la existencia de evidencia sobre todos los elementos del delito y la conexión esta con el acusado.

Por lo tanto, ante la falta de abuso de discreción, parcialidad o prejuicio por el foro primario en la resolución recurrida y dentro de

nuestra discreción, no encontramos una razón que justifique nuestra intervención en el presente caso. A tales efectos, se deniega la expedición del auto.

**IV**

Por los fundamentos antes expuestos, se declara No Ha Lugar la *Moción solicitando paralización de los procedimientos en auxilio de jurisdicción*, presentada el 4 de septiembre de 2025, y denegamos la expedición del auto de *certiorari*.

**Notifíquese inmediatamente por correo electrónico y vía teléfono, a las partes, a la Hon. Gema González Rodríguez, del Tribunal de Primera Instancia, Sala de Carolina, Salón de Sesiones 204.**

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.  La Jueza Aldebol Mora disiente sin escrito.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones